IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JESSIE BUCHANAN
ADC #099656                                                                    PLAINTIFF

v.                    Case No. 2:17-cv-00216-KGB/JJV

WENDY KELLEY, Director
Arkansas Department of Correction, *et al.*                                    DEFENDANTS

## ORDER

The Court has reviewed the three sets of Proposed Findings and Recommendations submitted by United States Magistrate Judge Joe J. Volpe (Dkt. Nos. 5, 23, 34). Plaintiff Jessie Buchanan timely filed objections to each of the three sets of Proposed Findings and Recommendations (Dkt. Nos. 6, 24, 37). Defendants also filed an objection to Judge Volpe's latest Proposed Findings and Recommendations (Dkt. No. 38). After careful review of the Proposed Findings and Recommendations, a *de novo* review of the record, and a review of all objections, the Court adopts the first and second sets of Proposed Findings and Recommendations as its findings in all respects (Dkt. Nos. 5, 23). The Court adopts, in part, and declines to adopt, in part, the third set of Proposed Findings and Recommendations (Dkt. No. 34). The Court refers this matter back to Judge Volpe to determine if separate defendants Mark Warner and James Dycus are entitled to summary judgment on the equal protection claims asserted against them in their individual capacities.

   **I.    Background**

In his complaint, Mr. Buchanan alleges that, on June 22, 2016, he and his fellow inmate, Ricky Rothenberger, were "locked up on 'investigative status'" but he was never told "in writing why he was being investigated and segregated in the Max's [i]solation cell." (Dkt. No. 2, at 7).

Mr. Buchanan also alleges that separate defendants Mr. Warner and Mr. Dycus reassigned him from his job as a school porter to the "field squad" after he was investigated for an altercation that he alleges did not occur (Dkt. No. 2, at 7). Mr. Buchanan alleges that Mr. Warner and Mr. Dycus displayed discriminatory intent by effecting this reassignment, as they reassigned him, an African American inmate, but did not reassign a similarly-situated Caucasian inmate (*Id*., at 8). Mr. Buchanan further alleges that separate defendant Valerie Westbrook retaliated against him for asserting his racial discrimination claim by moving him to a different barracks (*Id*.). Finally, Mr. Buchanan alleges that he informed separate defendants Wendy Kelley and Gaylon Lay about the alleged racial discrimination, but they did nothing to remedy the situation (*Id*., at 9).

The following facts are taken from defendants' statement of undisputed material facts, which was unopposed by Mr. Buchanan, as well as from the record evidence. Mr. Buchanan is an inmate incarcerated in the Arkansas Department of Corrections (Dkt. No. 30, ¶ 1). In June 2016, Mr. Buchanan was a Class 1 inmate at the East Arkansas Regional Unit ("EARU"), which is the highest classification for prisoners (Dkt. No. 28-1, at 18). On June 22, 2016, Mr. Buchanan, who is African American, got into an argument with Mr. Rothenberger, who is a Caucasian inmate (Dkt. Nos. 28-1, 28-2.). Mr. Rothenberger, who was also a Class 1 inmate without any disciplinary convictions, worked inside the prison in the maintenance department (*Id.*). Both men were removed from their jobs and placed on investigative status for 72 hours on June 22, 2016 (Dkt. No. 30, ¶ 8). On June 26, 2016, Mr. Buchanan and Mr. Rothenberger were released from investigative status without disciplinary charges being filed against either of them (*Id.*).

Prior to being put on investigative status, Mr. Buchanan was a school porter, and Mr. Rothenberg was assigned to maintenance (*Id*., ¶¶ 9, 10). When an inmate is placed on investigative status, they are labeled "unclassified," which removes the inmate's current bed and work

assignments (*Id.*, ¶ 12). An inmate on investigative status has his bed and work assignments reassigned when that inmate re-enters the inmate population (*Id.*).

Upon release from investigative status, both Mr. Buchanan and Mr. Rothenberger attended a mandatory classification hearing to be assigned to a barracks and a job (*Id.*, ¶ 13). On June 28, 2016, Mr. Buchanan appeared before the classification committee, which included Mr. Warner, Mr. Dycus, and Ms. Westbrook (*Id.*). At the beginning of the meeting, Mr. Warner suggested Mr. Buchanan return to his job as a school porter (Dkt. Nos. 2; 28-1). Ms. Westbrook questioned whether he should return to that position because the school year was over (*Id.*). Mr. Buchanan responded that he still had "stuff to do to close out the school year" (Dkt. No. 28-1 at 5). Nevertheless, defendants Mr. Warner and Mr. Dycus reassigned Mr. Buchanan to field utility which, according to him, is the most physically strenuous prison job and is only assigned to newly arriving prisoners or as punishment when a prisoner's class is demoted (Dkt. Nos. 2; 28-1; 33 at 5-6). In contrast, Mr. Rothenberger was allowed to return to his maintenance job (Dkt. Nos. 2; 28-2). Mr. Buchanan was not reinstated to his school porter position when the school year resumed in August 2016 (Dkt. Nos. 2, 28-1, 28-2). Instead, Mr. Buchanan alleges that the job was given to a Caucasian prisoner (Dkt. No. 28-1 at 6-7.)

On October 4, 2016, Mr. Buchanan appeared before the classification committee for his annual review (Dkt. Nos. 2, 28-1). Defendants Ms. Westbrook and Mr. Dycus were present (*Id.*). During the meeting, Ms. Westbrook asked Mr. Buchanan if he had any questions for the warden (*Id.*). Mr. Buchanan then asked Mr. Dycus why he racially discriminated against him and gave "preferential treatment" to the "white inmate" (Dkt. No. 2 at 15). Mr. Dycus told Mr. Buchanan that he was "offended" by the question and "would not address it" (*Id.*; Dkt. No. 28-1, at 15). At that point, Ms. Westbrook allegedly said, in a "hostile," "belligerent," and "discourteous" manner,

"Pack your stuff," and she moved Mr. Buchanan from barrack 19 to barrack 16 (Dkt. No. 28-1, at 15, 18, 19). Mr. Buchanan remained on field duty for 158 days, which was until early December 2017 (Dkt. No. 33).

**II. Discussion**

Mr. Buchanan brings this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that: (1) Mr. Warner and Mr. Dycus violated his due process rights by failing to give him notice prior to placing him in isolation; (2) Mr. Warner and Mr. Dycus violated his equal protection rights by reassigning him to the field squad based on his race; (3) Ms. Westbrook retaliated against him for accusing Mr. Warner and Mr. Dycus of racial discrimination; and (4) Ms. Kelley and Mr. Lay failed to investigate and correct the racial discrimination and retaliation committed by the other defendants (Dkt. No. 2). Mr. Buchanan also named Dexter Payne and Jada Lawerance as defendants in his complaint (*Id*., at 1). Mr. Buchanan sued each defendant in his or her official and individual capacities (*Id*., at 2).

**A. The First Set Of Proposed Findings and Recommendations**

The first set of Proposed Findings and Recommendations recommends the dismissal without prejudice of Mr. Buchanan's claims against Mr. Payne and Ms. Lawerance for failure to state a claim upon which relief may be granted (Dkt. No. 5). Mr. Buchanan timely filed an objection, arguing that he inadvertently omitted details linking both defendants to the allegedly unconstitutional conduct and maintaining that they were still liable for violating his civil rights (Dkt. No. 6, ¶ 2). He claims that both defendants were directors, that they had personal knowledge of his complaint of racial discrimination because of letters he sent to them, and that they could have intervened but failed to do so (Dkt. No. 6, ¶¶ 2-3).

Mr. Buchanan has sued Mr. Payne and Ms. Lawerance in their official and individual capacities pursuant to § 1983 seeking monetary damages (Dkt. No. 2, at 2). His claim against Mr. Payne and Ms. Lawerance in their official capacities for monetary damages is barred by sovereign immunity under the Eleventh Amendment. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (noting that state officials are entitled to sovereign immunity in their official capacities, unless they are sued for prospective injunctive relief).

As to Mr. Buchanan's claims for monetary relief against Mr. Payne and Ms. Lawerance in their individual capacities, in *Clemmons v. Armontrout*, the Eighth Circuit Court of Appeals found that liability under § 1983 requires a causal link to the deprivation of rights. 477 F.3d 962, 967 (8th Cir. 2007). To establish personal liability of supervisory defendants, such as Mr. Payne and Ms. Lawerance, the plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of constitutional rights. *Clemmons*, 477 F.3d at 967; *see also Askew v. Millerd*, 191 F.3d 953, 958-59 (8th Cir. 1999) (holding that a supervisor can be held individually liable under § 1983 if he directly participates in a constitutional violation or if his failure to supervise and train properly the offending employee caused a deprivation of constitutional rights).

The Court finds that Mr. Buchanan did not allege that Mr. Payne or Ms. Lawerance were directly involved in racial discrimination or retaliation, nor did Mr. Buchanan allege that they failed to supervise or train properly the offending employees. Mr. Buchanan simply asserts that Mr. Payne and Ms. Lawerance purportedly failed to investigate the alleged conduct and that they were "responsible and vested with the authority to ensure that ADC [policies] are followed and their subordinates are adequately trained . . . ." (Dkt. No. 5, at 3 (citing Dkt. No. 2, at 9)). Mr. Buchanan may not hold Mr. Payne and Ms. Lawerance responsible based solely on their positions

as supervisory officials. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). In other words, for these claims to survive, Mr. Buchanan must allege that Mr. Payne and Ms. Lawerance did something other than review and deny Mr. Buchanan's administrative grievances. Accordingly, this Court dismisses without prejudice for failure to state a claim upon which relief may be granted Mr. Buchanan's claims against Mr. Payne and Ms. Lawerance in their individual capacities. The Court also dismisses with prejudice Mr. Buchanan's claims for monetary damages against Mr. Payne and Ms. Lawerance in their official capacities.

### B. The Second Set Of Second Proposed Findings and Recommendations

Defendants filed a motion for partial summary judgment, arguing that Mr. Buchanan failed to exhaust his administrative remedies as to his due process claims against Mr. Dycus and Mr. Warner and his corrective inaction claims against Ms. Kelley and Mr. Lay. The second set of Proposed Findings and Recommendations recommends dismissal of those claims (Dkt. No. 23, at 1-2). Mr. Buchanan filed a timely objection (Dkt. No. 24). For the reasons discussed below, the Court adopts the second set of Proposed Findings and Recommendations and dismisses without prejudice the due process claims against Mr. Dycus and Mr. Warner and the corrective inaction claims against Ms. Kelley and Mr. Lay.

#### 1. Corrective Inaction Claims Against Ms. Kelley And Mr. Lay

In their partial motion for summary judgment, defendants argue that Mr. Buchanan did not properly exhaust his administrative remedies against Ms. Kelley and Mr. Lay. Prisoners must complete the administrative review process in accordance with the applicable prison rules. *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Furthermore, pursuant to 42 U.S.C. § 1997e, prisoners are required to exhaust their

administrative remedies *before* filing a § 1983 action. *McAlphin v. Morgan*, 216 F.3d 680, 682 (8th Cir. 2000) (per curiam). The record evidence indicates that, at the time of the events alleged in the complaint, Administrative Directive 14-16 was in effect, which states that "only one problem/issue should be stated in the grievance, not multiple problems/issues," and it cautions that each grievance "must specifically name each individual involved for a proper investigation and response to be completed by ADC." (Dkt. No. 18-1, at 4-5).

The record evidence indicates that Mr. Buchanan filed two grievances: EA-16-1357 and EA-16-988 (Dkt. No. 2, at 10-17). He did not name Ms. Kelley in either of those grievances. Mr. Buchanan argues that he did not fully understand the grievance policy and that he inadvertently failed to mention Ms. Kelley's name in either of his grievances (Dkt. No. 24, ¶ 2). Based on the record before the Court, Mr. Buchanan's claim against Ms. Kelley materialized *after* he filed the two grievances currently in the record. Accordingly, Mr. Buchanan has not properly exhausted his administrative remedies as to his claim against Ms. Kelley. The Court dismisses without prejudice for failure to exhaust Mr. Buchanan's corrective inaction claim against Ms. Kelley.

As to Mr. Buchanan's corrective inaction claim against Mr. Lay, in grievance No. EA-16-1357, Mr. Buchanan alleged that Ms. Westbrook retaliated against him by reassigning him to a new barrack and that Mr. Lay said he would investigate her conduct (Dkt. No. 2, at 14). He did not, however, allege in that grievance—as he does in his objection—that Mr. Lay failed to conduct the promised investigation or otherwise failed to take corrective action. Thus, he did not give prison officials the opportunity through the administrative process to address the claims he now seeks to bring against Mr. Lay, and the Court therefore dismisses without prejudice for failure to exhaust Mr. Buchanan's corrective inaction claim against Mr. Lay.

## 2. Due Process Claims Against Mr. Warner and Mr. Dycus

In their partial motion for summary judgment, defendants also argue that Mr. Buchanan did not properly exhaust his administrative remedies as to his claims that Mr. Warner and Mr. Dycus violated his due process rights by placing him in isolation without notice (Dkt. No. 18, ¶ 5). In grievance No. EA-16-988, Mr. Buchanan alleged that unnamed individuals violated his due process rights by placing him in isolation without notice, and, in the same grievance, he claimed that Mr. Dycus and Mr. Warner violated his equal protection rights (Dkt. No. 2, at 10). As discussed above, ADC's Administrative Directive 14-16—which was effective at the time of the alleged constitutional violations—states that "only one problem/issue should be stated in the grievance, not multiple problems/issues," and "[o]nly one issue will be addressed" while "[a]dditional problems/issues contained in the grievance will not be considered as exhausted." (Dkt. No. 18-1, at 5). In response to grievance No. EA 16-988, the reviewing officials addressed only the equal protection claim raised in the grievance (Dkt. No. 2, at 12-13). Per Administrative Directive 14-16, since the grievance raised two distinct issues, but only the equal protection issue was addressed, the due process claim in grievance No. EA 16-988 remains unexhausted based on the record evidence before the Court. Accordingly, the Court dismisses without prejudice for failure to exhaust Mr. Buchanan's due process claims against Mr. Warner and Mr. Dycus.

### C. The Third Set Of Proposed Findings And Recommendations

Defendants filed a motion for summary judgment seeking dismissal of Mr. Buchanan's remaining claims (Dkt. No. 28). The third set of Proposed Findings and Recommendations recommends that defendants' motion for summary judgment be: (1) granted as to all official capacity claims and the retaliation claim against Ms. Westbrook in her individual capacity; and (2) denied as to the equal protection claim raised against Mr. Warner and Mr. Dycus in their individual

capacities (Dkt. No. 34, at 2-3). Mr. Buchanan objects to this finding, arguing that all of his claims should be liberally construed and allowed to proceed (Dkt. No. 37, ¶ 1). He also asks the Court to allow his claim of retaliation against Ms. Westbrook to proceed because she "knew before hand [sic] that the ADC Deputy Director had affirmed my Grievance #EA-16-00988; that's why she placed [him] up for annual review and subsequently changed [his] job and housing status." (Dkt. No. 37, ¶ ¶ 2-3).

Defendants also filed an objection to the third set of Proposed Findings and Recommendations (Dkt. No. 38). In their objection, defendants dispute inferences to be drawn from existing evidence in the record and present new evidence. Defendants argue that, with such evidence added to the record, they are entitled to summary judgment on Mr. Buchanan's equal protection claims against defendants Mr. Warner and Mr. Dycus in their individual capacities (*Id.*, at 4-14).

For the reasons discussed below, the Court adopts the third set of Proposed Findings and Recommendations to the extent they recommend granting summary judgment in favor of defendants as to Mr. Buchanan's official capacity claims and the retaliation claim against Ms. Westbrook in her individual capacity, but the Court declines to adopt the Proposed Findings and Recommendations as to the equal protection claims against Mr. Warner and Mr. Dycus. Instead, the Court refers these claims to Judge Volpe for further consideration.

1. **Official Capacity Claims**

Defendants are entitled to summary judgment on Mr. Buchanan's claims for monetary relief against them in their official capacities.[1] Mr. Buchanan has sued each defendant pursuant to

---

[1] As discussed *supra*, the Court also dismisses with prejudice Mr. Buchanan's claims against Mr. Payne and Ms. Lawerance in their official capacities.

§ 1983 in their official and individual capacities, and he seeks only monetary relief as a remedy (Dkt. No. 2, at 2, 5). State officials are entitled to sovereign immunity in their official capacities, unless they are sued for prospective injunctive relief. *Monroe*, 495 F.3d at 594. Accordingly, Mr. Buchanan's claims for monetary relief against defendants—each of whom is a state official—in their official capacities are barred by sovereign immunity under the Eleventh Amendment. The Court grants summary judgment in defendants' favor on Mr. Buchanan's official capacity claims and dismisses with prejudice such claims.

## 2. Retaliation Claim Against Ms. Westbrook

The Court also grants summary judgment in Ms. Westbrook's favor on the retaliation claim raised against her in her individual capacity. Specifically, the Court agrees with the third set of Proposed Findings and Recommendations that Ms. Westbrook is entitled to qualified immunity on this claim. *See Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (noting that, to qualify for qualified immunity at the summary judgment stage, a defendant must demonstrate "(1) whether the facts alleged, construed in the light most favorable to [the nonmovant], establish a violation of a constitutional or statutory right, and (2) whether that right was established at the time of the alleged violation . . . .") (quotation and citation omitted)). To demonstrate retaliation in violation of the First Amendment, Mr. Buchanan must prove that he engaged in protected activity and that the defendant, to retaliate for the protected activity, took adverse action against him that would chill a person of ordinary firmness from engaging in that activity. *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Mr. Buchanan must also show that Ms. Westbrook took the adverse action in response to Mr. Buchanan's protected speech. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). The Court agrees with the third set of Proposed Findings and Recommendations that Mr. Buchanan has failed to

demonstrate that he suffered an adverse action as a result of Ms. Westbrook's alleged retaliation; accordingly, even viewing the facts in the light most favorable to Mr. Buchanan, he cannot demonstrate a violation of his constitutional right to be free from retaliation, so Ms. Westbrook is entitled to qualified immunity on this claim. The Court grants defendants' motion for summary judgment to the extent it seeks dismissal of this claim and dismisses with prejudice Mr. Buchanan's retaliation claim against Ms. Westbrook in her individual capacity.

3. **Equal Protection Claims Against Mr. Warner And Mr. Dycus In Their Individual Capacities**

As to Judge Volpe's recommendation that this Court deny defendants' motion for summary judgment on the equal protection claims against Mr. Warner and Mr. Dycus in their individual capacities, at this time, the Court declines to adopt this portion of the Proposed Findings and Recommendations and instead refers the equal protection claims against Mr. Warner and Mr. Dycus claim back to Judge Volpe for further consideration of whether Mr. Warner and Mr. Dycus are entitled to summary judgment in the light of the arguments defendants present and the newly presented record evidence.

Per 28 U.S.C. § 636(b)(1), a district court, when conducting a *de novo* review of a magistrate judge's report and recommendation, "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." In their objections to the third set of Proposed Findings and Recommendations, defendants dispute inferences to be drawn from existing evidence in the record and present new evidence that, in their telling, shows that they are entitled to summary judgment on the equal protection claims against Mr. Warner and Mr. Dycus in their individual capacities (Dkt. Nos. 38, at 4-14; 38-1; 38-2). The new evidence includes an affidavit from Jeremy Andrews, an employee of ADC at the time the events alleged in

the complaint occurred, and a copy of Administrative Directive 13-55, which governs prisoner assignments to "hoe squads" and "field squads." (Dkt. Nos. 38-1, 38-2). Since defendants did not present this record evidence prior to Judge Volpe entering his latest set of Proposed Findings and Recommendations, the Court declines to adopt the latest Proposed Findings and Recommendations to the extent they recommend denying summary judgment to defendants on Mr. Buchanan's equal protection claims against Mr. Warner and Mr. Dycus in their individual capacities. Instead, the Court refers these claims back to Judge Volpe to determine if defendants are entitled to summary judgment on these claims in the light of defendants' arguments and the newly presented record evidence.

### III. Conclusion

It is therefore ordered that:

1. The Court adopts the first and second sets of Proposed Findings and Recommendations as its findings in all respects (Dkt. Nos. 5, 23).

2. The Court grants defendants' motion for partial summary judgment (Dkt. No. 18).

3. The Court adopts, in part, and declines to adopt, in part, the third set of Proposed Findings and Recommendations (Dkt. No. 34).

4. The Court dismisses with prejudice Mr. Buchanan's claims against all defendants in their official capacities.

5. The Court grants, in part, defendants' motion for summary judgment to the extent it seeks summary judgment in favor of defendants on Mr. Buchanan's retaliation claim against Ms. Westbrook in her individual capacity (Dkt. No. 28).

6. The Court refers the motion for summary judgment back to Judge Volpe to consider whether the motion should be granted as to Mr. Buchanan's equal protection claims against Mr. Dycus and Mr. Warner in their individual capacities (*Id.*).

7. The Court dismisses without prejudice Mr. Buchanan's claims against Mr. Payne and Ms. Lawerance in their individual capacities. The Court dismisses Mr. Payne and Ms. Lawerance as parties to this action.

8. The Court dismisses without prejudice Mr. Buchanan's corrective inaction claims against Ms. Kelley and Mr. Lay. The Court dismisses Ms. Kelley and Mr. Lay as parties to this action.

9. The Court dismisses without prejudice Mr. Buchanan's due process claims against Mr. Warner and Mr. Dycus.

10. The Court dismisses with prejudice Mr. Buchanan's retaliation claim against Ms. Westbrook in her individual capacity. The Court dismisses Ms. Westbrook as a party to this action.

It is so ordered this the 5th day of March, 2019.

*[signature: Kristine G. Baker]*
Kristine G. Baker
United States District Judge