# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

JESSIE BUCHANAN                                                                            PLAINTIFF
ADC #099656

v.                                    2:17-cv-00216-KGB-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction; *et al.*                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

**I.     INTRODUCTION**

Jessie Buchanan ("Plaintiff") is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Department of Correction ("ADC").  His only remaining claim is that Defendants Deputy Wardens Mark Warner and James Dycus violated his equal protection rights, as protected by 42 U.S.C. § 1983, by assigning him to a field utility job based on his race.[1]  (Doc. Nos. 2, 41.) Plaintiff is proceeding with this claim against Defendants in their individual capacities, and monetary damages are the only type of relief he seeks.  (*Id*.)

Defendants have filed a Second Motion for Summary Judgment arguing they are entitled to qualified immunity.  (Doc. Nos. 43, 44, 45.)  Plaintiff has responded, Defendants have Replied, and this matter is now ripe for a decision. (Doc. Nos. 46, 49).  After careful review and for the following reasons, I find the Second Motion for Summary Judgment should be GRANTED, and Plaintiff's equal protection claim against Defendants Warner and Dycus should be dismissed with prejudice.

---

[1] On March 5, 2019, the Court dismissed all other claims raised in the Complaint and gave Defendants an opportunity to renew their request for summary judgment on the remaining equal protection claim.  (Doc. No. 41.)

II.   **SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

III.   **FACTS**

The following facts are undisputed. (Doc. Nos. 2, 28, 43, 46, 49.) Prisoners at the EARU received job and housing assignments from the Classification Committee, which includes Deputy Wardens Warner and Dycus. (Doc. No. 49-1.) Usually, prisoners meet with the Committee once

a year, but they also do so whenever prisoners are released from disciplinary confinement or investigative status. (*Id*.) The Committee assigns prisoners to jobs based on the needs of the institution. (*Id.*)

On June 22, 2016, Plaintiff, who is African American, and Ricky Rothenberger, who is Caucasian, got into an argument. (Doc. Nos. 2, 28, 43, 46, 49.) Both men were Class 1 inmates with excellent disciplinary records, and they both were assigned to jobs inside the prison. (*Id*.) Plaintiff worked as a school porter, while Rothenberger was a camera man with the maintenance crew. After the argument, they were removed from their jobs and placed on investigative status for seventy-two hours. (*Id*.) On June 26, 2016, Plaintiff and Rothenberger were released from investigative status without disciplinary charges being filed against either of them. (*Id.*)

On or about June 28, 2016, Plaintiff appeared before the Classification Committee. (*Id.*) At the beginning of the meeting, Deputy Warden Warner suggested Plaintiff return to his job as a school porter. (*Id*.) The Classification Supervisor, who is no longer a party in this case, mentioned school was out of session for the summer. (*Id*.) Plaintiff objected to the reassignment because he was still doing unspecified tasks to close out the school year. (*Id*.) The Committee decided to re-assign Plaintiff to field utility because the unit needed help harvesting crops.[2] (*Id.*) On the same day, Rothenberger appeared before the Committee, which allowed him to return to his job as a camera operator. (*Id*.) Plaintiff remained on field utility until sometime in December 2016, when he was reassigned to an unspecified inside position. (*Id*.)

IV.     ANALYSIS

Defendants argue they are entitled to qualified immunity on the equal protection claim

---

[2] According to the affidavit filed by the current Warden, the EARU is a "highly agricultural unit" that grows multiple crops used to feed the inmates in that facility. (Doc. No. 43-1 at 1)

raised against them in their individual capacities. Qualified immunity protects government officials who act in an objectively reasonable manner and shields them from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office,* 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (clarifying the privilege is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial"). Defendants are entitled to qualified immunity if: (1) the facts, construed in the light most favorable to the plaintiff, do not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known his or her actions were unlawful. *See Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (explaining courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

Plaintiff claims Defendants Warner and Dycus racially discriminated against him, in violation of the equal protection clause, by reassigning him to field utility while allowing Rothenberger and other Caucasian inmates released from investigative review status to return to their inside jobs. It is well settled that prisoners do not have a constitutional right to a specific job assignment. *Sanchez v. Earls,* No. 13-2579, 2013 WL 5629816 (8th Cir. Oct. 16, 2013) (unpublished opinion); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). However, prison

officials cannot intentionally treat inmates differently based on their race. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). As to the second part of the qualified immunity analysis, it was clearly established, many years prior to the incidents in this case, that prison officials cannot racially discriminate against prisoners in job assignments. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

To defeat qualified immunity and proceed to trial on his racial discrimination claim, Plaintiff must have evidence that: (1) he was treated differently from similarly situated inmates; and (2) the different treatment was the result of intentional and purposeful racial discrimination. *See In re: Kemp*, 894 F.3d 900, 909-10 (8th Cir. 2018); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008); *Lewis,* 486 F.3d at 1029.

### A.      Similarly Situated

As to the first requirement, it is well settled that the "two groups must be similarly situated in *all relevant respects*." *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (emphasis added); *Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004) (emphasis added). The parties agree both Plaintiff and Rothenberger were class I inmates with excellent disciplinary histories, who held inside jobs before they were released from investigative review status without any disciplinary charges being filed against them. However, according to the evidence now in the record, that is where the similarities end. Prior to his reassignment, Plaintiff held the position of a school porter, which is a seasonable job that does not require any advanced training or technical skills. (Doc. No. 43-1.) School porters complete clerical tasks and are responsible for keeping the classroom neat and orderly. (*Id*.) They do not tutor or have any teaching responsibilities, and thus, empty school porter positions are easily filled by other inmates. (*Id*.) In contrast, the camera men on the maintenance crew must ensure all security cameras in the unit are working properly. (*Id*.) It is a

year-round, technical job that requires specialized electrical training, and empty positions are not easily filled.  (*Id.*)  Thus, the undisputed facts demonstrate Plaintiff and Rothenberger were not similarly situated in all relevant respects.  *In re Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim"); *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection").

In an effort to establish dissimilar treatment based on race, Plaintiff points to several other Caucasian inmates he believes were treated more favorably than him. (Doc. Nos. 2, 43-2, 46.)  However, none of them are valid comparators because they were *not* similarly situated to Plaintiff in all relevant respects.  For instance, in September of 2016, inmate Peeler was allowed to return to his position as a school porter after being released from investigative status.  (Doc. Nos. 43-1, 49-1, 49-2.)  However, unlike Plaintiff, it is undisputed that school was *in session* when Peeler appeared before the Classification Committee.[3] (*Id.*)  In July 2017, Defendants returned inmate Billets to his inside position as an HVAC technician after he was released from investigative status without any disciplinary charges being filed against him.  (Doc. No. 43-1.)   But, in contrast to Plaintiff, Billets had extensive technical training and experience, there were only two inmate HVAC technicians at the EARU at that time, and his services were needed to maintain the unit's conditioning system, which was often malfunctioning in the hot summer months.[4]  (*Id.*)  Plaintiff

---

[3] In his deposition, Plaintiff said he believed his school porter position was filled, in August or September 2016, by a Caucasian inmate named Glass.  (Doc. No. 43-1.) However, EARU records demonstrate Peeler and Plaintiff were the only two school porters at the EARU from May to the end of September 2016.  (Doc. Nos. 49-1, 49-2.)

[4] Chandler, who was the other inmate HVAC technician, lost his job after being convicted of a disciplinary infraction for getting into an altercation with Billets, and he was transferred to another ADC unit. (Doc. No. 43-1.)  Thus, he was not similarly situated to Plaintiff.  Plaintiff also claims

also refers to inmates Burnett and Davidson, who were allowed to return to their inside positions as a school porter and boiler technician (respectively), after being convicted of disciplinary infractions. (Doc. Nos. 43-2, 46.)  However, unlike Plaintiff, both men regained their positions only after serving eleven to twelve months in disciplinary segregation, losing their class, and working their way back to their prior positions.  (Doc. No. 43-1.)  In particular, Plaintiff admits Davidson spent a year on field duty before he was returned to his inside position in the boiler room. (Doc. No. 43-1.)  Thus, I conclude Plaintiff has failed to produce evidence Defendants treated him differently from inmates who were similarly situated to him in all relevant respects.

### B.     Purposeful Racial Discrimination

As to the second prong of the analysis, Plaintiff has not identified "affirmative evidence" from which a jury could find intentional or purposeful racial discrimination.  *Lewis,* 486 F.3d at 1028*; see also Patel*, 515 F.3d at 815-816.  To the contrary, the parties agree Defendants originally intended to return Plaintiff to the school porter position until one of the Classification Committee members mentioned school was not in session.  (Doc. Nos. 43-1, 43-2.) Plaintiff believes his field utility assignment was racially motivated, improper punishment, and a violation of ADC rules.[5] But, ADC Admin. Dir. 13-55 provides all inmates without medical restrictions, including class 1 inmates with excellent disciplinary histories such as Plaintiff, can be assigned to the hoe squad or field utility duty "as a matter of institutional need."  (Doc. No. 43-3 at 2).   In June 2016, 20 of the

---

Billets's position could have been filled by two other inmates, Dunsworth and Meyers, who allegedly had HVAC training prior to being incarcerated. (Doc. No. 46.) However, that information was not in either inmate's prison file and there is no evidence Defendants Warner or Dycus were aware of their prior training. (Doc. No. 43-1.)

[5]  Prisoners do *not* have a constitutional right to require prison officials to comply with internal policies and procedures. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).  However, a prisoner official's failure to comply with an internal rule or policy could be considered as evidence of discriminatory intent.

124 inmates working in the EARU field were class 1. (Doc. No. 43-1.) Further, 71 of the 124 field workers were Caucasian and 53 were African American. *(Id.)* Thus, contrary to Plaintiff's unsupported assertion, there is no evidence that African American inmates were disproportionately assigned to work outside in the fields or that his temporary assignment there was racially motivated.

I am not unsympathetic to Plaintiff's frustration with losing his school porter position after being released from investigative status. And, I commend him on maintaining an excellent disciplinary history. Had his argument with Rothenberger occurred while school was in session, it is likely Plaintiff would have been returned to his school porter position. However, as previously explained, prisoners do not have a constitutional right to be assigned to a particular job. There is no evidence Defendants Warner or Dycus treated Plaintiff differently than similarly situated prisoners or that they acted with a racial animus when they temporarily reassigned him to field utility duty to help harvest the summer crops. Because the evidence viewed in the light most favorable to Plaintiff does not establish a violation of his equal protection rights, I conclude Defendants Warner and Dycus are entitled to qualified immunity, and I recommend Plaintiff's equal protection claim against them be dismissed with prejudice.

V. **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Second Motion for Summary Judgment (Doc. No. 43) be GRANTED and that Plaintiff's equal protection claim against Defendants Dycus and Warner in their individual capacities be dismissed with prejudice.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this recommendation and the accompanying Judgment would not

be taken in good faith.

DATED this 6th day of May 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE